# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

WILL T. TURNER AND CATHLEEN TURNER            PLAINTIFFS

VERSUS            CIVIL ACTION NO. 5:09cv00057-DCB-JMR

GENERAL INSURANCE COMPANY OF AMERICA
AND GULF GUARANTY INSURANCE COMPANY            DEFENDANTS

## OPINION AND ORDER

This matter comes before the Court on the defendant's Motion to Dismiss [**docket entry no. 2**]. Having carefully considered the Motion, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. Facts and Procedural History

Will T. Turner and Cathleen Turner ("plaintiffs") obtained a mortgage from United Mississippi Bank ("UMB") for their home located at 3922 Highway 61, Fayette, Mississippi, 39069. According to the original mortgage contract, the plaintiffs were to purchase a homeowner's insurance policy for the property, and if the plaintiffs failed to do so, the mortgagee, UMB, had the right to purchase lender-placed insurance coverage for the property to insure its security interest in the property. The plaintiffs maintained proper homeowner's insurance until September 2006. UMB was notified in September 2006 that the plaintiffs' homeowner's policy had been cancelled. As a result, on September 18, 2006, UMB purchased a lender-placed insurance policy through General Insurance Company of America and Gulf Guaranty Insurance Company ("defendants") to secure

UMB's interest in the property. The plaintiffs were notified in writing by the defendants about the lender-placed policy on September 18, 2006. The plaintiffs were told that if the they were able to show proof of current insurance coverage, the lender-placed policy would be cancelled. The plaintiffs never did so.

On December 10, 2006, the plaintiffs residence caught fire and suffered severe damage. Thereafter, the plaintiffs continued to pay there monthly mortgage payments to UMB and completely paid off the mortgage on February 19, 2008.

The plaintiffs commenced this suit against the defendants on February 27, 2008, in the Circuit Court of Jefferson County, Mississippi. The plaintiffs alleged damages arising from negligence, breach of contract, inadequate investigation, and wrongful denial of insurance payments, among other claims. On April 8, 2009, the defendants removed the action to this Court based upon complete diversity. Subsequently, the defendants filed the Motion to Dismiss on April 15, 2009.

The defendants argue that the plaintiffs do not have standing to bring the claim because plaintiffs are not a party to the lender-placed policy between defendants and UMB, and also because the plaintiffs are not third-party beneficiaries to the lender-placed policy. The plaintiffs contend that they are a "named" party to the lender-placed policy and that the rights of UMB under the policy are subrogated to the plaintiffs because the plaintiffs paid off their

loan to UMB, which included premium payments for the lender-placed policy. The motion and all responses thereto are now before the Court.

## II. Analysis

1. *Standard of Review*

When considering a motion to dismiss under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view the facts in a light most favorable to the plaintiff. Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007). The Supreme Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). To have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Id. at 1950(citing FED. RULE. CIV. PRO. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S.Ct. at 1969. Furthermore, "a well-

pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id.(quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1914)(overruled on other grounds)).

2. *Are Plaintiffs Named Insureds, Third-Party Beneficiaries, or Neither under the Lender-Placed Policy?*

The defendants argue that the plaintiffs have no standing to sue because the plaintiffs have no relationship, contractual or otherwise, with the defendants. The plaintiffs contend that they are a "named" party to the lender-placed policy because the policy references the "borrower" in several sections.

Specifically, the plaintiffs claim that they are a party to the insurance policy and owed payment according to the Agreement section, § 1C (debris removal), § 1D (reasonable repairs), and § 15(A) of the General Conditions provision, which states that "[a]mounts payable in excess of your interest will be paid to the 'borrower.'"[1] See Portfolio Security Policy Declarations at pp. 6-7, 14, att. as Exhibit "B" to Def. Memo. in Support of Motion to Dismiss. The Agreement states that "[w]e will provide the insurance described in this policy in return for the premium and compliance by you and the 'borrower' with **all applicable provisions of this policy**." Id. at 5 (emphasis added). Section 1C-Debris Removal provides:

> We will pay the reasonable expense incurred by you or the 'borrower' for the removal of debris resulting from

---

[1] According to the Definitions section in the lender-placed policy, "you" and "your" as used in the policy refer to the Named Insured Mortgagee, otherwise known as UMB for purposes of this order. "We," "us" and "our" refer to the Company providing insurance, otherwise known as the defendants in this order. "Borrower," as used in the policy, means the mortgager or mortgagors of an "insured location," otherwise known as the plaintiffs in this order.

4

property loss covered by this policy. Debris removal expense is included in the "limit of liability" applying to the "insured location".

Section 1D-Reasonable Repairs provides:

We will pay the reasonable cost incurred by you or the 'borrower' for necessary repairs made solely to protect the property covered by this policy from further damage, if there is coverage for the peril causing the loss. Use of this coverage is included in the "limit of liability that applies to the property being repaired.

Although these sections read alone and separate from each other would appear to show that the "borrower" has the right to payment under the policy for these damages, courts are to read insurance policies "as a whole, considering all the relevant portions together and, 'whenever possible, should give operable effect to every provision in order to reach a reasonable overall result.'" Progressive Gulf Ins. Co. v. We Care Day Care Center, 953 So. 2d 250, 353 (Miss. App. 2006). "If the 'language in an insurance contract is clear and unambiguous, then the court should construe it as written.'" Whitaker v. T&M Foods, Ltd., 7 So. 3d 893, 899 (Miss. 2009)(quoting Jackson v. Daley, 739 So. 2d 1031, 1041 (Miss. 1999)).

With the understanding that an insurance contract is to be read as a whole, using the "four corners" test, the Court must consider all relevant provisions of the policy in its determination of whether the plaintiffs are named insureds or third-party beneficiaries under the policy. Potomac Ins. Co. of Illinois v.

5

Adams, 997 So. 2d 238, 240-241 (Miss. App. 2008). The Mississippi Supreme Court has stated that in order to be a third party beneficiary under a contract,

> the contract between the original parties must have been entered into for [the] benefit [of the third party], or at least such benefit must be the direct result of the performance with the contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. This obligation must have a legal duty which connects the beneficiary with the contract. In other words, the right (of action) of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself. No right against the contract promisor or promisee is acquired by a "mere incidental beneficiary."

Rein v. Benchmark Const. Co., 865 So. 2d 1134, 1146 (Miss. 2004). The Fifth Circuit has also stated that to be a third-party beneficiary under a contract, the plaintiff must show that "the condition which is alleged to have been broken was placed in the contract [between third parties] for his direct benefit." Gerard J.W. Bos. & Co. Inc. v. Harkins & Co., 883 F. 2d 379 (5th Cir. 1989).

Under the "Named Insured Mortgagee" provision in the policy, United Mississippi Bank is the only party listed as an insured. Portfolio Security Policy Declarations at pp. 6-7, 14, att. as Exhibit "B" to Def. Memo. in Support of Motion to Dismiss. No other party, including the plaintiffs, is listed as an insured or as an additional insured.

Section 15-Loss Payment under the General Conditions provision provides:

> A. All losses except losses under Coverage 1F-Personal Property:
>> We will adjust all losses with you. We will pay you but in no event more than the amount of your interest in the "insured location". Amounts payable in excess of your interest will be paid to the "borrower unless some other person is named by the "borrower" to receive payment. Loss will be payable 30 days after we receive your proof of loss and: (1) reach agreement with you; (2) there is an entry of final judgment ; or (3) there is a filing of an appraisal award with us.
>
> B. Losses under Coverage 1F-Personal Property:
>> We will adjust all losses with the "borrower". We will pay the "borrower unless some other person is named by the "borrower" to receive payment. Loss will be payable 30 days after we receive the "borrower's" proof of loss and: (1) reach an agreement with the "borrower"; (2) there is an entry of final judgment; or (3) there is a filing of an appraisal award with us.

<u>Id</u>. at 14. Considering this language in conjunction with the Agreement at page 5 and the "Named Insured Mortgagee" provision, it is clear that the plaintiffs are not named insureds under the policy. Nonetheless, the defendants do owe the plaintiffs a legal obligation to adjust all personal property losses with the plaintiff and to pay the plaintiffs for those personal property losses if the plaintiffs fulfill all applicable provisions of the policy. Therefore, the plaintiffs are third-party beneficiaries under the lender-placed policy.

The instant case is analogous to <u>Simpson v. Balboa Ins. Co.</u>, 2009 WL 1291275 (S.D. Miss. 2009). In <u>Simpson</u>, the court held that

7

the plaintiff was not a third-party beneficiary under the lender-placed insurance policy because the policy named Select (the bank-mortgagee) as the only named insured, provided "no coverage for personal property, provided no provision for payment of loss to the borrowers unless the loss is in excess of Select's interest in the property, and no right on the part of the borrower to participate in any adjustment of loss." Id. at *4. The policy in the instant case does provide coverage for personal property, and it also states that the adjustment of loss for personal property will be adjusted with the borrower. Portfolio Security Policy Declarations at pp. 14, att. as Exhibit "B" to Def. Memo. in Support of Motion to Dismiss. For these reasons, the Court finds that the plaintiffs are third-party beneficiaries under the lender-placed policy and have standing to assert their claims against the defendants.

3. *Subrogation*

The plaintiffs also contend that they have standing to sue because the rights of UMB were subrogated to the plaintiffs when their mortgage debt to UMB was paid in full on February 19, 2008. However, the plaintiff's reliance on Hutson v. State Farm & Casualty Co., 954 So. 2d 514 (Miss. App. 2007), for their subrogation argument is misplaced. The facts in that case and the facts in the instant case are not analogous. In Hutson, the insurance company was subrogated to the claim of its insured because a co-insured had intentionally damaged property that was covered by the insurance

policy.  Therefore, the insurance company paid the wife, the insured, under the policy and sought repayment from the husband, the co-insured.  In the instant case, the plaintiffs argue that they are now a subrogee, or assignee, to all of the rights of UMB.

Under Mississippi law, "[s]ubrogation is the substitution of one person in the place of another, whether as a creditor or as the possessor of any rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and to its rights, remedies, or securities." Hutson, 954 So. 2d at 517.  Further, "subrogation 'is a creature of equity, and is the mode which equity adopts to compel the ultimate payment of a debt by one who in equity and good conscience, ought to pay it. Id.

Although the plaintiffs may be third-party beneficiaries under the policy, they are not an original or "named" party to the policy.  Also, there is no subrogation provision in the policy.  More significantly, in §§ 20 and 22 under the "General Conditions" provision of the insurance policy, UMB's rights under the contract cannot be assigned without the approval of the defendants and "no action by the borrower shall prejudice" the rights of UMB under the policy.  Portfolio Security Policy Declarations at p. 14, att. as Exhibit "B" to Def. Memo. in Support of Motion to Dismiss.  Stated differently, the rights of UMB under the insurance policy and the rights of the borrower against the insurer are completely different and separate.  As a result, the plaintiff cannot claim that they are

9

subrogated to the rights of UMB when the plaintiff was never an original or "named" party to the contract. Thus, the Court finds that the rights of UMB under the lender-placed policy are not subrogated to the plaintiffs.

### III. Conclusion and Order

Inasmuch as the Court finds that the plaintiffs do have standing to bring certain claims against the defendants as third-party beneficiaries under the insurance policy, the Court's Order does not reach the merits of the plaintiff's other claims pled in the complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion to Dismiss [docket entry no. 2] is **DENIED**.

**SO ORDERED**, this the 7th day of October 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE